**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sandra Jean Mowery, | No. CV-13-02325-PHX-ESW |
| Plaintiff, | |
| v. | **ORDER** |
| Commissioner of the Social Security Administration, | |
| Defendant. | |

Pending before the Court is Plaintiff Sandra Jean Mowery's appeal of the Social Security Administration's ("Social Security") denial of her claim for disability benefits. On August 13, 2010, Plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income under Titles II and XVI of the Social Security Act. Both applications allege disability beginning August 1, 2007. (A.R. 25, 220, 226, 239). This Court has jurisdiction to decide Plaintiff's appeal pursuant to 42 U.S.C. §§ 405(g), 1383(c). Under 42 U.S.C. § 405(g), the Court has the power to enter, based upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the case for

a rehearing. Both parties have consented to the exercise of U.S. Magistrate Judge jurisdiction.[1] (Doc. 10). After reviewing the Administrative Record ("A.R."), Plaintiff's Opening Brief (Doc. 18)[2], Defendant's Response Brief (Doc. 24), and Plaintiff's Reply (Doc. 25), the Court finds that the Administrative Law Judge's ("ALJ") decision is supported by substantial evidence and is free of harmful legal error. The decision is therefore affirmed.

## I. LEGAL STANDARDS

### A. Disability Analysis: Five-Step Evaluation

The Social Security Act (the "Act") provides for disability insurance benefits to those who have contributed to the Social Security program and who suffer from a physical or mental disability. 42 U.S.C. § 423(a)(1). The Act also provides for Supplemental Security Income to certain individuals who are aged 65 or older, blind, or disabled and have limited income. 42 U.S.C. § 1382. To be eligible for benefits based on an alleged disability, the claimant must show that he or she suffers from a medically determinable physical or mental impairment that prohibits him or her from engaging in any substantial gainful activity. 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(A)(3)(A). The claimant must also show that the impairment is expected to cause death or last for a continuous period of at least 12 months. *Id*.

To decide if a claimant is entitled to Social Security benefits, an ALJ conducts an analysis consisting of five questions, which are considered in sequential steps. 20 C.F.R. §§ 404.1520(a), 416.920(a). The claimant has the burden of proof regarding the first four steps:[3]

---

[1] This case was reassigned to Hon. Eileen S. Willett on November 14, 2014. (Doc. 26).

[2] Cited herein as "Pl. Br. at __"

[3] *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).

**Step One**: Is the claimant engaged in "substantial gainful activity"? If so, the analysis ends and disability benefits are denied. Otherwise, the ALJ proceeds to step two.

**Step Two:** Does the claimant have a medically severe impairment or combination of impairments? A severe impairment is one which significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does not have a severe impairment or combination of impairments, disability benefits are denied at this step. Otherwise, the ALJ proceeds to step three.

**Step Three:** Is the impairment equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity? 20 C.F.R. §§ 404.1520(d), 416.920(d). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is presumed to be disabling, the ALJ proceeds to the fourth step of the analysis.

**Step Four:** Does the impairment prevent the claimant from performing work which the claimant performed in the past? If not, the claimant is "not disabled" and disability benefits are denied without continuing the analysis. 20 C.F.R. §§ 404.1520(f), 416.920(f). Otherwise, the ALJ proceeds to the last step.

If the analysis proceeds to the final question, the burden of proof shifts to the Commissioner:[4]

**Step Five:** Can the claimant perform other work in the national economy in light of his or her age, education, and work experience? The claimant is entitled to disability benefits only if he or she is unable to perform other work. 20 C.F.R. §§ 404.1520(g), 416.920(g). Social Security is

---

[4] *Parra*, 481 F.3d at 746.

- 3 -

responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given the residual functional capacity, age, education, and work experience. *Id*.

### B. Standard of Review Applicable to ALJ's Determination

The Court must affirm an ALJ's decision if it is supported by substantial evidence and is based on correct legal standards. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012); *Marcia v. Sullivan*, 900 F.2d 172, 174 (9th Cir. 1990). Although "substantial evidence" is less than a preponderance, it is more than a "mere scintilla." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison v. NLRB*, 305 U.S. 197, 229 (1938)). It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id*.

In determining whether substantial evidence supports the ALJ's decision, the Court considers the record as a whole, weighing both the evidence that supports and detracts from the ALJ's conclusions. *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993). If there is sufficient evidence to support the ALJ's determination, the Court cannot substitute its own determination. *See Morgan v. Comm'r of the Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir.1999) ("Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). This is because the ALJ, not the Court, is responsible for resolving conflicts, ambiguity, and determining credibility. *Magallanes*, 881 F.2d at 750; *see also Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

The Court must also consider the harmless error doctrine when reviewing an ALJ's decision. This doctrine provides that an ALJ's decision need not be remanded or reversed if it is clear from the record that the error is "inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue,* 533 F.3d 1035, 1038 (9th Cir. 2008) (citations omitted); *Molina*, 674 F.3d at 1115 (an error is harmless so long as there

remains substantial evidence supporting the ALJ's decision and the error "does not negate the validity of the ALJ's ultimate conclusion") (citations omitted).

## II. PLAINTIFF'S APPEAL

### A. Procedural Background

Plaintiff alleges that on August 1, 2007, at the age of 25, she became unable to work due to the following four impairments: (i) PTSD, (ii) bipolar disorder, (iii) depression; and (iv) back pain.[5] (A.R. 88, 303, 306, 308). Plaintiff has a high school education and has worked as a cashier, housekeeper, and telemarketer. (A.R. 288).

Plaintiff filed her initial Disability Insurance Benefits and Supplemental Security Income applications on August 13, 2010. (A.R. 25, 220, 226, 239). Social Security initially denied both applications on December 22, 2010. (A.R. 127-312). On May 3, 2011, upon Plaintiff's request for reconsideration, Social Security affirmed the denial of Plaintiff's applications. (A.R. 154, 157). Thereafter, Plaintiff requested a hearing before an ALJ. (A.R. 14). The ALJ held a hearing on February 29, 2012, which was continued as Plaintiff was incarcerated. (A.R. 47-73). The ALJ held the continued hearing on June 11, 2012, during which Plaintiff was present and represented by an attorney. (A.R. 36-81). In his July 18, 2012 decision, the ALJ found that Plaintiff is not disabled. (A.R. 22-36). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Social Security Commissioner. (A.R. 1-3). On November 13, 2013, Plaintiff filed a Complaint (Doc. 1) pursuant to 42 U.S.C. §§ 405(g), 1383(c) requesting judicial review and reversal of the ALJ's decision.

---

[5] Plaintiff's application for Social Security benefits only includes PTSD, bipolar disorder, and depression as alleged disabling impairments. (A.R. 88). Plaintiff's September 22, 2010 Social Security Function Report also indicates a back impairment. (A.R. 306, 308). The ALJ's decision includes "degenerative joint disease of the lumbar spine" as an additional severe impairment.

### B. The ALJ's Application of the Five-Step Disability Analysis

The ALJ completed the first four steps of the disability analysis before finding that Plaintiff is not disabled and entitled to disability benefits.

#### 1. Step One: Engagement in "Substantial Gainful Activity"

The ALJ determined that Plaintiff has not engaged in substantial gainful activity since August 1, 2007, the alleged disability onset date. (A.R. 20). Neither party disputes this determination.

#### 2. Step Two: Presence of Medically Severe Impairment/Combination of Impairments

The ALJ found that Plaintiff has the following severe impairments: degenerative joint disease of the lumbar spine, bipolar disorder, and personality disorder. (A.R. 21). This determination is undisputed.

#### 3. Step Three: Presence of Listed Impairment(s)

The ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the Social Security regulations. (A.R. 27). Neither party challenges the ALJ's determination at this step.

#### 4. Step Four: Capacity to Perform Past Relevant Work

In determining Plaintiff's residual functional capacity ("RFC"), the ALJ gave significant weight to the opinion of consultative examiner, Dr. Elizabeth Ottney. (A.R. 27). Dr. Ottney opined that claimant was able to perform a range of work at the light exertional level. (A.R. 692-97). The ALJ also gave significant weight, but not full weight, to the opinions of (i) psychological consultative examiner, Dr. Van Eerd; (ii) medical consultative examiner, Dr. Mary Downs; and (iii) other State agency examiners on initial review and on reconsideration. (A.R. 27). The ALJ found that those opinions support that none of Plaintiff's conditions are disabling. (*Id.*).

In addition, the ALJ considered evidence that Plaintiff was found eligible for the Seriously Mentally Ill II ("SMI") benefits program through Magellan of Arizona. (A.R.

28). SMI eligibility reviewer, Dr. Aaron Bowen, found that Plaintiff's mental illness interferes with Plaintiff's ability to complete her daily activities, interact with others, and work. (A.R. 791). The ALJ found that the determination had limited probative value because qualification for "SMI benefits is a determination distinct to Magellan and is not determinative under the criteria for a finding of disability pursuant to the Social Security Act." (A.R. 28).

Finally, the ALJ considered the Plaintiff's subjective complaints. (A.R. 23-25). Although the ALJ did not find the complaints to be fully credible, the ALJ gave them "generous consideration" and assessed a more restrictive RFC. (A.R. 27).

The ALJ assessed that Plaintiff retained the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) and SSR 83-10, subject to several limitations. (A.R. 23). First, the ALJ determined that Plaintiff is "limited to simple to unskilled work/simple routine tasks." (*Id*.). The ALJ also stated that Plaintiff requires frequent supervision, is limited to occasional interaction with the public and coworkers, and can never climb ladders, ropes, or scaffolds or perform twisting movements. Finally, the ALJ found that Plaintiff must avoid extreme temperatures and hazardous environments. (*Id*.).

A vocational expert ("VE") was present at the June 11, 2012 hearing. The ALJ asked whether the Plaintiff could perform Plaintiff's past work as a housekeeper if she had the RFC and limitations set forth in the preceding paragraph. (A.R. 73-74). The VE answered affirmatively.

After the VE answered the ALJ's questions, Plaintiff's attorney read from Section I of the Mental Residual Functional Capacity Assessment ("MRFCA") form completed by Dr. Downs. (A.R. 74-75, 122-24). Plaintiff's attorney requested the VE to consider Dr. Downs' statements as additional hypothetical limitations, asking as follows:
> And if you had a moderate limitation with respect to the ability to maintain attention and concentration for extended periods, the ability to perform activities within a schedule, maintaining regular attendance and be punctual within

> customary tolerances, and the ability to sustain ordinary routine without special supervision, and the ability to make simple work-related decisions, and the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms, and to perform at a consistent pace without an unreasonable number and length of rest periods, . . . how would that impact on the capacity to perform past relevant work?

(A.R. 74-75).

The VE requested a definition of "moderate," but Dr. Downs' MRFCA form did not contain one. Plaintiff's attorney supplied his own definition of "moderate" and rephrased the question as follows:

> If moderate is defined as the having the ability to perform the designated task or function, but has or will have noticeable difficulty, that is, distracted, for example, from the activity from 11 to 20 percent of the workday or workweek, which is essentially a little more than an hour per day or half a day per week, how would that impact the capacity to do the past relevant work?

(A.R. 76).

The VE responded that "[b]ased on that definition of moderate [Plaintiff] would not be able to work." (*Id.*). Plaintiff's attorney then read from Dr. Van Eerd's report. (A.R. 78, 701). Plaintiff's attorney asked the VE to consider Dr. Van Eerd's statements as additional hypothetical limitations:

> [T]here's indications that pace is fair, cognitive capacity is fair, and persistence and endurance to task was limited; concentration and recall were listed as fair. If those fairs are considered to be the equivalent of moderate in the definition I gave you, how would that impact on the capacity to do past relevant work or any alternative. . .

(A.R. 78-79). The VE responded with "[s]ame answer." (*Id.*).

Plaintiff's attorney requested the ALJ to submit interrogatories to Dr. Van Eerd and Dr. Downs if there is any question as to what either meant by their interpretation of "moderate" or "fair." *Id.* In a June 20, 2012 letter to the ALJ, Plaintiff again requested that Dr. Van Eerd and Dr. Downs be asked to complete interrogatories. (A.R. 341).

Alternatively, Plaintiff requested that Drs. Van Eerd and Downs be subpoenaed at a supplemental hearing. (*Id.*). In his decision, the ALJ acknowledged Plaintiff's request, but explained "there is no need for such a request to be fulfilled." (A.R. 27).

Based on Plaintiff's vocational background, Plaintiff's testimony, and the VE's testimony, the ALJ found that the position of housekeeper constitutes Plaintiff's past relevant work. (A.R. 29). The ALJ compared Plaintiff's assessed RFC with the physical and mental demands of the housekeeper position. Based on that comparison and the VE's testimony, the ALJ determined that Plaintiff is capable of working as a housekeeper. (*Id.*).

Plaintiff challenges the ALJ's determination at step four on two grounds. First, Plaintiff argues that the ALJ improperly denied Plaintiff's request to question Drs. Van Eerd and Downs regarding their use of the terms "moderate" and "fair." Second, Plaintiff argues that the ALJ failed to give proper weight to the determination of Dr. Bowen that Plaintiff is mentally ill and entitled to SMI benefits.

### 5. Step Five: Capacity to Perform Other Work

The ALJ's analysis did not proceed to the fifth step as the ALJ found at step four that Plaintiff is not disabled.

### C. Plaintiff's Challenge to the ALJ's Analysis at Step Four

#### 1. The ALJ Did Not Err in Denying Plaintiff's Request to Question Drs. Van Eerd and Downs Regarding their Definitions of "Moderate" and "Fair"

As an administrative proceeding, Social Security hearings are non-adversarial in nature and the Federal Rules of Evidence do not apply. *See Bayliss v. Barnhart,* 427 F.3d 1211, 1218 n. 4 (9th Cir.2005). A claimant in a Social Security disability case is not entitled to unlimited cross-examination of a witness. Rather, a claimant is only entitled to "such cross-examination as may be required for a full and true disclosure of the facts." 5

U.S.C. § 556(d); *Copeland v. Bowen,* 861 F.2d 536, 539 (9th Cir. 1988).  The ALJ has discretion to decide when cross-examination, including the issuance of interrogatories, is warranted.  *Id*.  The Ninth Circuit Court of Appeals has addressed the extent of such discretion.

For example, in *Copeland,* a claimant sought to submit interrogatories to a physician, which asked the physician's opinions regarding the claimant's back, legs, knees, and feet.  *Copeland*, 861 F.2d at 539.  The ALJ limited the interrogatories to cover only the concerns raised by claimant's counsel at the time of hearing.  The Ninth Circuit Court of Appeals held that the ALJ did not abuse his discretion in imposing such a limitation.  *Id*.  In affirming the ALJ's decision, the Court further stated that the "ALJ did have a substantial basis, other than the interrogatories, on which he based his conclusions regarding [the claimant's limitations]."  *Id*. at 540.

In *Barker v. Secretary of Health and Human Services*, 882 F.2d 1474 (9th Cir. 1989), a claimant desired to ask a vocational expert at a hearing what, in the expert's opinion, constitutes a "significant number of jobs" existing in the national economy.  The ALJ did not allow the question, stating "[i]t's my job to determine what's significant and what isn't."  *Id*.  On appeal, the Ninth Circuit held that the ALJ could have allowed the question, but his decision to refuse it was not error.  The Court explained that the ALJ correctly concluded that the expert's opinion about what constitutes a significant number of jobs is not relevant.  "[W]hether there are a significant number of jobs a claimant is able to perform with his limitations is a question of fact *to be determined by a judicial officer*."  *Id*. at 1480 (emphasis in original).  In explaining its holding, the Court cited *Solis v. Schweiker*, 719 F.2d 301 (9th Cir. 1983) for the principle that a claimant is not entitled to unlimited cross-examination, but only as may be required for a full and true disclosure of the facts.

In *Solis*, an ALJ initially considered the opinions from five physicians, including the opinion of claimant's treating physician finding that claimant was permanently disabled.  To apparently "resolve an open question in his mind," the ALJ sought an

additional medical report from another doctor. That doctor concluded that the claimant had the capacity to sit, stand, or walk for an eight hour work day. The ALJ denied the claimant's request to cross-examine the doctor for possible bias, but allowed the claimant to submit interrogatories instead. The ALJ rejected the opinions from the initial five physicians and found that based on the additional doctor's assessment, the claimant was capable of sedentary work.

The Court in *Solis* noted that the ALJ has discretion to decide when cross-examination is warranted. Yet because the report from the additional doctor was "so crucial to the ALJ's decision," the Court held that the ALJ's denial of the claimant's request to cross-examine that doctor was an abuse of discretion. Although the ALJ did allow the claimant to submit interrogatories, the Court found that the alleged bias was better elicited through "rigorous in-court scrutiny."

Plaintiff cites *Solis* in challenging the ALJ's denial of Plaintiff's request to submit interrogatories to or subpoena Dr. Van Eerd and Dr. Downs. *Solis* is distinguishable from this case. In *Solis*, the additional doctor's opinion was crucial to the ALJ's decision because the ALJ *solely relied* on the opinion in finding the claimant not disabled. Here, the ALJ considered, but did not solely rely on Drs. Van Eerd and Downs' opinions in finding Plaintiff not disabled. Therefore, unlike in *Solis*, Plaintiff was not denied the opportunity to cross-examine a crucial witness whose findings substantially contradicted medical evidence that was favorable to Plaintiff. In fact, Drs. Van Eerd and Downs' reports were consistent with other medical evidence in this case. As discussed below, Dr. Van Eerd recommended that Plaintiff engage in job training, finding that Plaintiff "appear[ed] able to carry out simple detailed noncomplex tasks." (A.R. 702). Similarly, Dr. Downs assessed that Plaintiff is capable of performing simple unskilled work.

Further, Dr. Downs' statements quoted by Plaintiff's attorney at the June 11, 2012 hearing that contained the term "moderate" were not Dr. Downs' actual functional limitation assessments. Similarly, Dr. Van Eerd's statements quoted by Plaintiff's attorney at the hearing that contained the term "fair" were not Dr. Van Eerd's actual

functional limitation assessments. Rather, the statements were from a preliminary narration that was to *aid* Drs. Downs and Van Eerd in determining Plaintiff's functional limitations.

Dr. Downs used Social Security's standardized MRFCA form. The Social Security Program Operations Manual System ("POMS") specifically states that Section I of the MRFCA "**is merely a worksheet** to aid in deciding the presence and degree of functional limitations and the adequacy of documentation and **does not constitute the RFC assessment**." POMS DI 24510.060(B)(4)(a)[6] (emphasis in original). The ALJ is to use Section III of the MRFCA form in determining a claimant's RFC. *Id.* It is in Section III "that the **actual mental RFC assessment is recorded,** explaining the conclusions indicated in section I, in terms of the extent to which these mental capacities or functions could or could not be performed in work settings." *Id*.

The top of Section I of the MRFCA form used by Dr. Downs states "The questions below help determine the individual's ability to perform sustained work activities. However, the <u>actual mental residual capacity assessment is recorded in the narrative discussion(s) in the explanation text boxes</u>." (A.R. 123) (emphasis added). At the June 11, 2012 hearing, Plaintiff's attorney did not quote from any of the explanation text boxes. Plaintiff's attorney quoted only Dr. Downs' responses to the form's preliminary questions intended to aid Dr. Downs in making her actual RFC assessment. (A.R. 74-75, 123). Dr. Downs provided her RFC assessment in the final section of the MRFCA, clearly stating that Plaintiff is "capable of [simple unskilled work]" and is "able to meet the basic mental demands of competitive, remunerative, unskilled work with limited social interaction on a sustained basis." (A.R. 124). As the term "moderate" was not used in Dr. Downs' final RFC assessment that Plaintiff is capable of simple unskilled work, its definition was not needed.[7]

---

[6] Available at https://secure.ssa.gov/apps10/poms.nsf/lnx/0424510060

[7] The Court notes that in Section III, Dr. Downs incorporates by reference two narrative text boxes that state that Plaintiff has "moderate limitations, at worst" in two

- 12 -

Unlike Dr. Downs, Dr. Van Eerd did not use Social Security's MRFCA form. Instead, Dr. Van Eerd used a format established by the Arizona Department of Economic Security. It consists of a narrative report and a separate form entitled "Psychological/Psychiatric Medical Source Statement." At the top of the Psychological/Psychiatric Medical Source Statement form, it states "Please give us a statement of your medical opinion, based on your own substantiated medical findings about what the individual can still do despite his or her impairment(s). . . . We need this in addition to your narrative report. . . ." (*Id.*). Like Section I of the MRFCA, the narrative report is a worksheet to aid in deciding the presence and degree of functional limitations. The actual mental RFC assessment is contained in the Psychological/Psychiatric Medical Source Statement form.

At the June 11, 2012 hearing, Plaintiff's attorney quoted from Dr. Van Eerd's narrative report where it states that Plaintiff's pace, cognitive capacity, concentration, and recall were fair and that Plaintiff's persistence and endurance to task was limited. (A.R. 701). This does not constitute Dr. Van Eerd's RFC assessment. Dr. Van Eerd provided his RFC assessment in the Psychological/Psychiatric Medical Source Statement form, stating that Plaintiff "appears able to carry out simple detailed noncomplex tasks" and recommended job training. (*Id.*). As the term "fair" was not used in Dr. Van Eerd's actual assessment of Plaintiff's RFC in the Medical Source Statement Form, its definition

---

areas. These particular statements, however, were not presented by Plaintiff's attorney to the VE at the June 11, 2012 hearing. Nor does Plaintiff address them in her Opening Brief (Doc. 18). Any argument relating to the ambiguity of such statements is therefore waived. *Meanel v. Apfel*, 172 F.3d 1111, 1115(9th Cir. 1999) (at least when claimants are represented by counsel, they must raise all issues and evidence at their administrative hearings in order to preserve them on appeal); *Bray v. Commissioner of Social Security Admin*. 554 F.3d 1219, 1226 n.7 (9th Cir. 2009) (deeming argument not made in disability claimant's Opening Brief waived). The ALJ, rather than the Court, was in the optimal position to resolve any ambiguities in statements made in Dr. Downs' RFC assessment. *See Meanel*, 172 F.3d at 1115. The Court does not find that manifest injustice would occur in deeming the argument waived. *Id*. (failure to comply with waiver rule is only excused when necessary to avoid manifest injustice).

was not needed.[8]  Therefore, similar to *Barker*, although the ALJ could have allowed Plaintiff to question Drs. Van Eerd and Downs regarding their definitions of "moderate" or "fair" as used in certain portions of their forms, the ALJ's refusal did not constitute error.

Finally, while an ALJ has a duty to fully and fairly develop the record and to assure that a claimant's interests are considered, that duty is triggered only when there is ambiguous evidence or when the record is inadequate to allow for a proper evaluation of the evidence. *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001) (the ALJ's duty to develop the record does not allow a claimant to shift the claimant's own burden of proving disability to the ALJ).  The Court does not find that the record is ambiguous or inadequate to allow for proper evaluation of the evidence.  The ALJ's duty to fully and fairly develop the record and to assure Plaintiff's interests are considered was therefore not triggered.  It is the ALJ's role to interpret and resolve conflicts in the evidence.

---

[8] Dr. Van Eerd does state in the Psychological/Psychiatric Medical Source Statement form that Plaintiff presents with "moderate limitation" in sustaining routine and interacting with others.  Yet any argument pertaining to an alleged ambiguity with respect to Dr. Van Eerd's use of the term "moderate" in his RFC assessment has been waived.  At the hearing, Plaintiff's attorney only presented to the VE Dr. Van Eerd's statements that used the term "fair."  *Meanel*, 172 F.3d at 1115 (at least when claimants are represented by counsel, they must raise all issues and evidence at their administrative hearings in order to preserve them on appeal).  Plaintiff's Opening Brief also does not discuss any of Dr. Van Eerd's statements that use the term "moderate" and does not present an argument why the Court should review any alleged ambiguities in Dr. Van Eerd's use of "moderate" in the Psychological/Psychiatric Medical Source Statement form.  *Bray,* 554 F.3d at 1226 n.7 (deeming argument not made in disability claimant's Opening Brief waived).  Regardless, the ALJ, rather than the Court, was in the optimal position to resolve any such ambiguities.  *See Meanel*, 172 F.3d at 1115.  The Court does not find that manifest injustice would occur in deeming the argument waived.  *Id.* (failure to comply with waiver rule is only excused when necessary to avoid manifest injustice).

*Lingenfelter v. Astrue*, 504 F.3d 1028 (9th Cir. 2007) (court defers to an ALJ's rational interpretation of conflicting evidence).

The Court finds that the cross-examination of Drs. Van Eerd and Downs was not required for a full and true disclosure of the facts. Further, like in *Copeland*, the ALJ had other evidence to support his conclusion regarding Plaintiff's ability to work, which includes Drs. Van Eerd and Downs' own RFC assessments. Accordingly, the ALJ did not abuse his discretion in denying Plaintiff's request to submit interrogatories or subpoena Dr. Van Eerd and Downs at a supplemental hearing.

### 2. As Dr. Bowen Did Not Treat Plaintiff, his Opinion is Not Entitled to the Weight of a Treating Medical Provider

In weighing medical source opinions in Social Security cases, there are three categories of sources: (i) treating medical sources, who actually treat the claimant; (2) examining sources, who examine but do not treat the claimant; and (3) non-examining sources, who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, more weight should be given to a treating source's opinion than to the opinion of a non-treating source. *Id*. An examining source's opinion generally must be given greater weight than that of a non-examining source. *Id*. at 830. Under Ninth Circuit case law, an ALJ may favor the opinion of a non-examining source as long as the opinion is consistent with independent clinical findings or other evidence in the record. *Thomas*, 278 F.3d at 957; *see also Magallanes v. Bowen*, 881 F.2d 747 (9th Cir. 1989) ("'[T]o the extent that [the nontreating physician's] opinion rests on objective clinical tests, it must be viewed as substantial evidence....'") (quoting *Miller v. Heckler,* 770 F.2d 845, 849 (9th Cir.1985)).

Social Security regulations define a "treating source" as the claimant's "own physician, psychologist, or other acceptable medical source who provides [the claimant] . . . with medical treatment or evaluation and who has, or has had, an ongoing relationship with [the claimant]." 20 C.F.R. § 404.1502. An ALJ properly considers whether a treating source has seen a claimant "a number of times and long enough to have obtained

a longitudinal picture" of that individual's impairment. *See* 20 C.F.R. § 404.1527(c)(2)(i).

Here, Plaintiff argues that Dr. Bowen is Plaintiff's treating psychologist. (Pl. Br. at 4). Plaintiff asserts that Dr. Bowen's opinion that Plaintiff was severely mentally ill is therefore entitled to the weight of a treating medical source's opinion. Yet the record shows that Dr. Bowen is a non-examining, non-treating medical source.

Magellan's Notice of Decision, dated November 10, 2011, states that the decision that Plaintiff meets SMI benefit eligibility is "[b]ased upon the information provided by the evaluator, which was reviewed by a *Magellan* Psychiatrist or Psychologist." (A.R. 790) (italics in original). Dr. Bowen began his summary of findings with the statement that Plaintiff "was once again evaluated by staff at her [mental health] provider." (A.R. 791). After describing the records received from the provider, Dr. Bowen stated that he "doesn't see any evidence of distinct mood episodes, though there is ample evidence of affective instability." (*Id.*). Because Dr. Bowen did not treat or even examine Plaintiff, Dr. Bowen's opinion is not entitled to controlling or great weight.

Plaintiff also erroneously states that "[t]here is a consensus amongst Mowery's treating mental health providers that Mowery suffers restrictions due to her mood swings, difficulty sleeping, history of suicidal ideations, crying spells, depression, and hallucinations." None of the individuals cited by Plaintiff qualify as a "treating" source. The record does not show that those individuals saw Plaintiff a sufficient number of times and "long enough to have obtained a longitudinal picture" of that individual's impairment. *See* 20 C.F.R. § 404.1527(c)(2)(i).

Even if some of the individuals did qualify as a "treating" source, the records from those individuals do not contradict the ALJ's finding that Plaintiff is not disabled for purposes of Social Security disability benefits. Plaintiff argues that the ALJ's RFC assessment is inconsistent with Dr. Bowen's finding that Plaintiff's mental illness interferes with her ability to complete daily activities, interact with others, and work. (Pl. Br. at 12-13). The Court disagrees. By including "bipolar disorder and personality

- 16 -

disorder" among the list of Plaintiff's severe impairments, the ALJ explicitly acknowledged that Plaintiff's mental illness significantly limits Plaintiff's mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c) ("If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment.").

The ALJ did not err in rejecting Dr. Bowen's opinion. The ALJ properly weighed the evidence in the record and rendered a decision that is supported by substantial evidence.

### 3. Magellan of Arizona's Determination that Plaintiff has a Qualifying Mental Illness Entitling Plaintiff to SMI Benefits is Not Binding on Social Security

The "ultimate responsibility for determining whether an individual is disabled under Social Security law rests with the Commissioner." Thus, disability determinations by other government agencies are not binding on the Commissioner. 20 CFR § 404.1504; Social Security Ruling 06-03p, 2006 WL 2329929. This rule applies even where the standards for obtaining disability benefits through another agency are more rigorous than Social Security standards. *Wilson v. Heckler*, 761 F.2d 1383, 1386 (9th Cir. 1985). Therefore, while a state finding of disability can be introduced into evidence in a proceeding for Social Security disability benefits, an ALJ may attribute as much or as little weight to it as he or she deems appropriate. 20 C.F.R. § 404.1504; *see also Bates v. Sullivan*, 894 F.2d 1059, 1063 (9th Cir. 1990) (overruled on other grounds); *Little v. Richardson,* 471 F.2d 715, 716 (9th Cir.1972) (State determination of disability was not binding in proceedings on application for Social Security disability benefits).

Under the above authorities, the ALJ was entitled to give as little or as much weight to Magellan's determination as the ALJ deemed appropriate. The ALJ explained that because qualification for SMI benefits is a determination distinct to Magellan, it has "limited probative value" as to whether Plaintiff is disabled pursuant to the Social

Security Act. The ALJ, however, stated that he considered the clinical and diagnostic evidence used by the physicians who concluded that Plaintiff is entitled to SMI benefits. The ALJ found, and the Court concurs, that the evidence is consistent with the Plaintiff's assessed RFC.

## III. CONCLUSION

Based on the foregoing, the Court concludes that the ALJ's decision is supported by substantial evidence and is free from reversible error. Accordingly, the decision of the Commissioner of Social Security is affirmed.

**IT IS THEREFORE ORDERED** affirming the decision of the Commissioner of Social Security. The Clerk of Court shall enter judgment accordingly.

Dated this 6th day of February, 2015.

_____
Eileen S. Willett
United States Magistrate Judge